HENRY W. GARDNER and others *v.* CHARLES T. and LU-
CINDA JAMES.

SAME *v.* ALEXANDER DUNCAN and CHARLES J. LOWRY.

CHARLES J. LOWRY *v.* HENRY W. GARDNER and others.

A paid mortgage, assigned to one of the mortgagors, the notes secured by which are long past due, cannot be reissued by the mortgagor's assignment of the same to a creditor, so as to compete with the title of another creditor of the mortgagor to the mortgaged estate, or to a surplus of the same in the hands of a court of equity, fixed by a decree of the court prior to the reissue of the mortgage, although the creditor who received the assignment of the mortgage was no party to the decree.

THE original bill in this controversy was filed by Henry W. Gardner and others against Charles T. and Lucinda James, for

the purpose of setting aside in favor of the complainants,—who claimed title by execution to certain real estate situated on and near High street, in Providence,—of a deed of the same, executed by the assignee of James to his wife, the said Lucinda; upon the ground, that said deed was procured by said James to be executed to said Lucinda, in fraud of his creditors. The title of the complainants to said real estate accrued under an attachment of the same, made by the firm of Thurston, Gardner & Co., on the 3d day of April, 1857, as creditors of James, upon which they recovered judgment against him at the March term of the Supreme Court for the county of Providence, 1859; and the estate attached was sold to Henry W. Gardner, one of the firm, who purchased for himself and his copartners, at sheriff's sale upon the execution issued on said judgment, on the 28th day of December, 1859. Pending the original bill, the matter of it, with other matters in controversy between Thurston, Gardner & Co. and James, was referred to the sole arbitrament and award of Edward N. Dickerson, Esq., who awarded in favor of the complainants, and thereupon a decree was entered up in their favor, in conformity to the award. The attached estate, however, was subject to a large mortgage held by Alexander Duncan, and containing a power of sale; which power Duncan exercising prior to the decree, the complainants bought the estate at auction sale under the power, for a sum greatly exceeding the mortgage. They then filed a supplemental bill, making Duncan a party thereto, for the purpose of reaching the surplus of the purchase money over and above the amount of his mortgage; and finding that one Charles J. Lowry claimed said surplus, under a mortgage of the estate originally executed on the 17th day of September, 1858, by James and wife to Thomas A. Jenckes who acted for Horace A. Day, to whom Jenckes assigned it, and which James having taken up, on the 1st day of July, 1861, assigned to Lowry, they made Lowry a party to the supplemental bill, by amendment, for the purpose of concluding his rights by the decree. Lowry put in an answer to the supplemental bill, and thereupon filed a cross bill against Henry W. Gardner and others, in assertion of his claim. The other facts are sufficiently stated in the opinion of the court.

The relative equities of Gardner and others, and of Lowry, to said surplus, were argued by *Thurston*, for the former, and by *Payne*, for the latter.

BULLOCK, J. The bill, supplemental to the original bill, was brought to subject the surplus of a fund in the hands of Alexander Duncan, arising from the sale of certain lands alleged to be the property of the respondent, Charles T. James, to the payment of a judgment recovered against him, in favor of Henry W. Gardner and others, the original complainants,—a decree having been heretofore entered in the original cause, subjecting the lands to the payment of such judgment,—which decree failed to have effect by reason of a previous sale of the lands, under a prior mortgage held by said Duncan.

Pending the suit, it appeared that one Charles T. Lowry claimed to have an interest in these lands, or in this fund, by virtue of the assignment to him, by James, of a certain mortgage given to Thomas A. Jenckes, and which, for greater distinctness, we designate as the Jenckes mortgage. The original complainants, thereupon, brought against Lowry their amended supplemental bill, for the purpose of determining his interest; and Lowry afterwards brings his cross bill against the complainants for the same general purpose. Lowry answers this supplemental bill; and it is agreed that his answer, and also the depositions of Jenckes, Moses Taylor, Robert W. Lowber and Horace H. Day, taken either in the original bill or in the supplemental bill, shall be used, so far as they are relevant, upon the hearing of the cross and supplemental bills, and that both of said bills may be heard and determined together.

The question, therefore, arising upon these bills is, which has the superior equity to this surplus fund? the complainants, who claim under their attachment of April 3d, 1857, followed by a judgment, execution, levy upon, and sale of, the mortgaged premises? or Lowry, claiming the same as the assignee of the Jenckes mortgage?

It appeared, at the hearing, that on the 17th day of September, 1858, Charles T. James and his wife, Lucinda, who then claimed the fee in these lands, mortgaged the same to Thomas A. Jenckes, acting as the agent of Horace H. Day, to secure advances—not

to exceed in all $8000—then and thereafter to be made by Day to James; and that when these advances had been fully made, James executed his note, of even date with the mortgage, for $8000, payable to the order of Jenckes, in eighteen months after its date, with interest; and that, on the 23d day of May, 1859, Jenckes endorsed, without recourse, and delivered over this note to his principal, Day, and also assigned and delivered to him the mortgage. It also appeared, that Day retained the custody and ownership of the Jenckes note and mortgage, until the 15th day June, 1861, when, by virtue of a written contract then entered into between him, James, and Moses Taylor, this note and mortgage, with other securities, and *three* notes of hand made by a Mr. Ames, of Chicopee, Mass., to Day, were lodged in the hands of Taylor, in *escrow.* It appears, in proof, from Taylor, that this contract truly specifies the purposes for, and the conditions upon which, these securities were placed in his hands. The contract recites the delivery to Taylor and Day of the Ames notes,—the delivery to Taylor by Day of the Jenckes note and mortgage, and the like delivery of a full release by Day of all his indebtedness against James, and stipulates, on the part of Day, that if the Ames notes are paid, Taylor shall surrender to James the Jenckes note and mortgage, and deliver to James the release. It appears in proof, from Robert W. Lowber, that the Ames notes were paid.

It is true, Day states that James indebtedness to him was not settled by James in person, but that certain parties *implicated,* as he terms it, met James, received from him the evidences of James' indebtedness, and gave him therefor the Ames notes. It is substantially proven by Lowber, that these parties were Taylor, who was interested in a settlement, Lowber, who assisted in the negotiations preliminary to it, and George W. Richardson, who, it appears, in some way represented Ames. Charles T. Lowry nowhere appears as one of these parties. It is also in proof, from Day, that he had no personal interview with James, pending the negotiation, but that he acted through his agent, Lowber; and Lowber, thus acting, states, that the written contract of June 15th, 1861, not only contemplated a full and complete settlement between James and Day, but that it, in fact, resulted in such a settlement, whereby James' indebtedness, of

about $28,000, was liquidated by the Ames notes, of $14,000, or one-half. The last of the Ames notes matured on the 6th day of September, 1861, when, if paid, it became the duty of Taylor to surrender to James the Jenckes note and mortgage, and deliver to him the general release executed by Day. The precise time of this surrender is not shown. But it appears that early in January, 1862, James had possession of the Jenckes note and mortgage, at his office in Fulton street, New York city, when and where he assigned and delivered them to Lowry. This assignment to Lowry was made *four* months after the last of the Ames notes, and nearly *two* years after the Jenckes note, had become due and payable. The consideration upon which the assignment was made was a preëxisting debt, originating in 1857 and 1858, and the assignor was James, the maker of the note and one of the mortgagors, the other mortgagor being his wife. Now, the condition of the Jenckes mortgage was, that when James should pay, or cause to be paid, the indebtedness therein described and thereby secured, and take up the evidences of such indebtedness, the mortgage was to become void, and the interest or estate granted was to determine.

When a mortgage once attaches to secure a given indebtedness, there is, of course, no doubt that the lien so created continues until the debt is paid, or the mortgage is otherwise satisfied or released. No mere change in the form of the indebtedness determines this lien ; and if, by lapse of time, the remedy upon the debt is barred, the appropriate remedy may still be enforced upon the mortgage. If, however, the indebtedness be, in fact, paid, the interest or estate granted by the mortgage at once determines, because the debt is the principal, and the mortgage but the accessory or incident. It is clear that no act of the mortgagor, or of those acting in his behalf, can revive a lien thus determined, especially when such an act may operate to defeat the claims of prior or intervening creditors.

The question of payment is to be settled in the same manner, and by the same rules, as any other fact resting in parol. The mere possession, by the mortgagor, of the mortgage note, even after it has become due and payable, is not conclusive, but only *prima facie* evidence of payment ; since this possession may be

explained.   But such possession by the only party liable upon the note, a long time after the note has matured, and continued unquestioned by the mortgagee after a full knowledge of this fact on his part, affords, of itself, a strong presumption that such possession is a legal possession, and that the mortgage debt has been in fact paid.   Such facts, uncontradicted and unexplained, are of themselves sufficient evidence of payment.

We think the testimony proves, that the Jenckes note and mortgage were deposited by Day, with Taylor, to be surrendered to James, upon the happening of an event in the future ; that such was the intention, not of Day and of Taylor alone, but also of James ; that this future contingency did occur, and that in pursuance of such contract and such intent, this note and mortgage were then so surrendered by Taylor to James.   By such surrender, both the note and mortgage became *functi officio*. We think the testimony proves, that sometime subsequent to this surrender, James sought to revive this note and mortgage by assigning them to Lowry, to secure a preëxisting debt.   We find no testimony tending to prove—neither is it claimed by Lowry—that he furnished the consideration, or any portion of the consideration, upon which this surrender was made.   We therefore see nothing entitling him to any equitable claim to the mortgaged premises, or to their proceeds, as against these complainants.

It appears of record, in these suits, that between the time of the surrender of the Jenckes note and mortgage to James, and the assignment thereof to Lowry, there was entered, in this court, a final decree against James and his wife, subjecting the interest mortgaged to the payment of the judgment in favor of the original complainants.   We find no testimony tending to prove an intent on the part of James, at the time of its surrender, to keep the Jenckes note and mortgage longer alive ; and no act done by him, indicative of such an intent, until after the final decree referred to.   It is true, the form this surrender took was by assignment ; but this may have been for the security of Taylor, who held the mortgage only in *escrow*.   Equity regards, mainly, the substance of a transaction.   It deals with the duties and rights of parties, as depending, not so much upon any mere form

of words, as upon the true relations and obligations subsisting between them. James received the money for which this mortgage was given. It was his duty to repay it. It was repaid to Day, the holder of the mortgage, not by Lowry or by any one acting in his behalf, but by James or by parties acting in his behalf. The transaction between Day and James, through Taylor, was, in effect, a payment, which extinguished the mortgage debt, and determined whatever estate was granted by the mortgage. In this view of the question, it is not necessary to consider whether the mortgage to Jenckes was one of personal indemnity alone, and, therefore, satisfied when his individual liability ceased; or, whether the lien created by this mortgage being subsequent in point of time to, and with notice of, the complainants' attachment, is subordinate to their lien.

It is clear that Lowry, the complainant in the cross bill, who claims only through James, under an assignment of an overdue note and mortgage, took, subject to the equities then subsisting between James and these complainants, and took therefor, under this assignment, no greater rights than his assignor had. It appears, that prior to the assignment by James to Lowry, this court, upon the original bill in this cause, then pending, and to which bill James was a party, entered a decree divesting James of all title and interest in the premises conveyed by the Jenckes mortgage, and subjecting the same to the payment of the complainants' judgment.

The cross bill of Charles T. Lowry, in this cause, is therefore dismissed with costs. A supplemental decree will be entered in favor of the complainants, Henry W. Gardner and others, and against the said Lowry, perpetually enjoining him from assigning or transferring to any person or persons the note and mortgage, each bearing date the 17th day of September, 1858, and executed by the said Charles T. James and Charles T. and Lucinda James to Thomas A. Jenckes; or, at any time, from setting up the said mortgage as a claim or lien upon the lands therein described and thereby granted; or as a claim or lien upon so much of the surplus fund, now in the registry of this court, arising from a former sale of said lands by Alexander Duncan, as will be fully sufficient to pay all the proper costs to be taxed in this cause, and also to

pay and satisfy the complainants' judgment, interest and costs; and that this surplus fund, now in the registry of the court, be applied, *first*, to the payment of the costs to be taxed upon the original, supplemental and amended supplemental bills of these complainants; and, *second*, to the payment of the judgment, debt, interest, costs and officer's fees, due from Charles T. James, upon a judgment recovered against him in favor of the original complainants, in this court, on the 16th day of April, 1859.